**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Schwab & Co., Inc., | No. CV-09-2590-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| David M. Reaves, as Trustee for the Bennett Liquidating Trust; Barbara Payne and Thomas Payne, husband and wife; Jeannette Kirk and Bernard Kirk, husband and wife; and Sharon Lewis | |
| Defendants. | |

Currently pending before the Court is Plaintiff's Motion for Preliminary Injunction (Dkt. #9) and Defendants' Motion to Dismiss (Dkt. #28). After reviewing these motions and the papers associated with each, and after holding a hearing regarding the issues raised therein, the Court issues the following Order.

**I.  Background**

The story behind this motion for preliminary injunction begins a few steps removed from this case, with a non-party, Mrs. Debbie Bennett. According to Defendants, Mrs. Debbie Bennett was the second wife of Phoenix dermatologist who was 17 years younger than her husband and who was a housewife with no securities licensing. "By all accounts," she was "a very attractive woman" who "dressed in the finest, most expensive designer clothing," "adorned herself in thousands of dollars of expensive jewelry," and "portrayed herself as a 'gifted' securities trader." (Dkt.#9-1 at 7) Based on her "glittering image," she

was able to persuade "friends, family, some of the great, true supporters of charity and good works in the valley to 'invest' with her." (Dkt.#9-1 at 8) Ultimately, her "investments" turned out to be nothing more than a Ponzi Scheme, and many people lost a great deal of money. These individuals sued Mrs. Bennett, who ultimately declared bankruptcy.

After Mrs. Bennett filed for bankruptcy, some of the individuals who had lost money to her, Barbara and Thomas Payne, Jeannette and Bernard Kirk and Sharon Lewis (the "Individual Defendants") decided to sue Charles Schwab, a national broker-dealer and member of the Financial Industry Regulating Authority ("FINRA"). Mrs. Bennett apparently used her personal Schwab account (Account Number 7055-0930) to invest at least some of Defendants' and other investor's funds. However, Mrs. Bennett and her husband were the sole account holders of the Schwab Account, and Schwab was not aware that Mrs. Bennett was using the Schwab Account to invest money belonging to anyone other than the Bennetts. Schwab explained that "upon information and belief," all of the funds turned over by the Defendants to Mrs. Bennett were first deposited into a Wells Fargo bank account in the name of Deborah Bennett and/or her husband, James Alva Bennett. The money would then be transferred from their personal Wells Fargo account to their Schwab account.

After the Bennett's bankruptcy reorganization plan was confirmed, the Bennett Liquidating Trust was formed to satisfy allowed unsecured claims against the Bennetts' estate. Defendant Reaves serves as the trustee of this trust. Defendant Reaves, in his capacity as a trustee, is attempting to bring claims before the FINRA in an arbitration action ("the Arbitration Action") on behalf of certain non-party creditors of the Estate, namely other investors in the Bennett's alleged Ponzi Scheme.

The Defendants raise the following claims against Schwab in the Arbitration Action: aiding and abetting breach of fiduciary duty, aiding and abetting fraud, aiding and abetting securities fraud and negligence. They claim approximately five million dollars in the Arbitration Action.

**II.    The Present Action**

As explained above, Defendants seek to arbitrate their claims against Plaintiff and have initiated an arbitration proceeding with FINRA. To stop the Arbitration Action from

proceeding, Plaintiff Charles Schwab filed the present Motion for Preliminary Injunction, arguing that Defendants (the defrauded creditors of Mrs. Bennett) have no right to arbitrate their claims. Schwab also seeks a declaratory judgment that the Defendants have no right to arbitrate and seeks a permanent injunction requiring Defendants to dismiss the claim they have filed with FINRA.

Specifically, Schwab points out that because the defrauded creditors of Mrs. Bennett are strangers to the account agreement between Mrs. Bennett and Schwab, they have no right to arbitrate their claims against Schwab. (Dkt.#27 at 3) No independent agreement to arbitrate exists between Schwab and Mrs. Bennett's defrauded creditors, and Schwab argues that irreparable harm will result from being forced to litigate the exact same claims between the exact same parties in two separate forums, namely, FINRA and a court of law (either federal court or state court, depending on where the defrauded creditors chose to bring their claims). Mrs. Bennett's defrauded creditors, the Defendants in this action, are not Schwab's customers and have no right to arbitrate this claim. Schwab further asserts that it is likely to succeed on the merits and that public policy favors granting the injunction and that the balance of the hardships favors Schwab. (Dkt.#9)

Mrs. Bennett's defrauded creditors, the defendants in this case, respond by arguing that Schwab should be judicially estopped from taking a contrary position to that which it took in another, similar case, Stern v. Charles Schwab & Co., Case No. 2:09-CV-01229-PHX-DGC, hereafter, "the Stern case." In the Stern case, third-party investors in the Bennett account at issue here sued Schwab in District Court for claims under Arizona law, including multiple torts and violations of securities laws, and Schwab apparently argued that their claims were subject to arbitration. Defendants further argue that federal law respects and enforces arbitration, that arbitration is required by Schwab's Account Agreement, and that the doctrine of equitable estoppel further bars Schwab from opposing arbitration. (Dkt. #24)

Schwab replies by explaining that it merely wanted to avoid litigating exactly the same case in two different forums in the Stern case and that judicial estoppel is inapplicable because Judge Campbell ruled in Stern that the claims were not arbitrable. Schwab reiterates that the Defendants are strangers to Mrs. Bennett's Account Agreement and that they have

- 3 -

no right to arbitrate under it. Finally, Schwab argues that equitable estoppel is inapplicable because none of the required elements are present.

Defendants filed a supplement to their Response in which they stated (but without any case citations to support their assertion) that they are "entitled to arbitration as a matter of law" and urge the Court to dismiss this case if it finds in their favor. (Dkt.#28) This same, two-page document was also labeled a "Motion to Dismiss."

## III. Analysis

### A. Preliminary Injunction Criteria

As explained by the Ninth Circuit, "[a] preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing irreparable loss of rights before judgment." Textile Unlimited, Inc. v. A.BMH & Co., 240 F.3d 781, 786 (9th Cir. 2001). To establish a right to an injunction, a Plaintiff must show that it is "likely to succeed on the merits," that it is "likely to suffer irreparable harm in the absence of preliminary relief," that "the balance of equities tips in [its] favor" and that an injunction is not contrary to the public interest. American Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008)). Each element is analyzed below.

### B. Likelihood of Success on the Merits

To analyze likelihood of success on the merits, the Court must decide whether the Arbitration Agreement between Mrs. Bennett and Schwab is enforceable against Schwab by Mrs. Bennett's defrauded creditors. As explained in detail below, the answer to this question appears to be no.

#### 1. Standing of Defendants to Enforce Mrs. Bennett's Account Agreement Against Schwab

The U.S. Supreme Court has articulated the fundamental principle that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'" Howsam v. Dean Wittier Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting Steelworkers v. Warrier & Gulf Nav. Co., 363 U.S. 574, 582 (1960)). Whether the parties have agreed to submit a matter to arbitration is "an issue for judicial

determination unless the parties clearly and unmistakably provide otherwise." Howsam, 537 U.S. at 79.

As a FINRA member firm, Schwab is required to arbitrate disputes only where (1) Schwab has contractually agreed to arbitrate with the claimant or (2) the claimant is a customer of Schwab. FINRA Rule 12200. Each possible genesis of a right for Mrs. Bennett's defrauded creditors to arbitrate their claims against Schwab is discussed below.

### (a) Contractual Basis for Claim to Arbitrate

Here, Defendants have pointed to no agreement other than that between Mrs. Bennett and Schwab as a contractual basis for their asserted right to arbitrate. However, Mrs. Bennett's defrauded creditors are simply not parties to the agreement between Mrs. Bennett and Schwab. Nor does the contract appear to have intended to confer any benefit upon them. To recover as a third-party beneficiary under Arizona law, "the contracting parties must intend to directly benefit that person and must indicate that intention in the contract itself." Sherman v. First Am. Title Ins. Co., 201 Ariz. 564, 567, 38 P.3d 1229, 1232 (Ariz. App. 2002). "[I]t must appear that the parties intended to recognize [the third party] as the *primary* party in interest and as privy to the promise." Id. (emphasis in original).

The Account Agreement between Ms. Bennett and Schwab established a *personal account* for Mrs. Bennett. The primary "parties in interest" were Schwab and Mrs. Bennett. Mrs. Bennett's defrauded creditors do not qualify as beneficiaries of a "class" under the account agreement because the contract does not appear to have been *expressly intended* to benefit them. Nahom v. Blue Cross and Blue Shield of Ariz., 180 Ariz. 548, 552, 885 P3d 1113, 1117 (Ariz. App. 1994) (explaining that a party is a third party beneficiary only if it "definitely appear[s] that the parties intend[ed] to recognize the third party as the primary party in interest" of the provision). As Schwab points out, the express provisions of the contract lead to a completely opposite interpretation, because Schwab required Mrs. Bennett to guarantee that "no one except the Account Holders listed on the Account Application . . . has an interest in the Account." (Dkt. #18-2 at 16 [Section 3©])

Defendants, Mrs. Bennett's defrauded creditors, creatively attempt to argue that the following clause includes them:

- 5 -

> Section 16: Arbitration. You, your heirs, and any other persons having or claiming to have a legal or beneficial interest in the Account, including court-appointed trustees and receivers (collectively "you") and Schwab agree to settle by arbitration any controversy between or among you . . . us and/or any of our parents, subsidiaries, affiliates, officers, directors, employees or agents relating to the Account Agreement, your Account or account transactions, any other Schwab account in which you claim an interest, or in any way arising from your relationship with us or the Bank, including any controversy over the arbitrability of a dispute.

However, as Schwab points out, Defendants' argument is easily refuted. In essence, Defendants' argument would require this Court to hold that by contracting to open Mrs. Bennett's *personal* account, "the parties intended to obligate Schwab to arbitrate claims belonging to any person who ever gave Mrs. Bennet any money that was deposited into the account." (Dkt.#27 at 7) Moreover, the parties would have had to intend that these anonymous third parties were the "primary parties in interest" with respect to the agreement to arbitrate.

Rather than standing in Mrs. Bennett's shoes, her defrauded creditors are attempting to bring claims against Schwab for negligently failing to supervise her dealings to their detriment. None of the claims are being brought on behalf of Mrs. Bennett; they are being brought on behalf of her defrauded creditors. None of the claims are premised upon any injury to Mrs. Bennett, but upon alleged injuries to Mrs. Bennett's investors.

This fact raises serious questions about the standing of Defendant Reaves, as a Trustee appointed in a bankruptcy proceeding, to assert claims on behalf of the bankrupt estate's creditors. Williams v. California 1st Bank, 859 F.2d 664, 667 (9th Cir. 1988) (explaining that the "Trustee lacked authority to bring suit on the [investors'] claims). While the Trustee may have the right to pursue claims previously owned by the Bennetts, the claims asserted in the FINRA action are not on behalf of the Bennetts, but on behalf of the Bennetts' creditors, as explained above.

As such, it is highly unlikely that Defendants would have any likelihood of success on the merits based on an argument that the Agreement between Mrs. Bennett and Schwab entitled them to arbitration.

///

- 6 -

### **(b)** **Customer-Based Claim to Arbitrate**

As explained above, determining whether an alternative basis for a right to arbitration exists requires the Court to analyze whether Defendants qualified as "customers" of Schwab. While the term "customer" does not appear to have been precisely defined either by the courts or by FINRA, Schwab cites to a number of cases to support its assertion that "courts never accord 'customer' status to investors who have no relationship whatsoever with the broker-dealer or any of its registered representatives or agents." (Dkt.#9 at 7)  See, e.g., Brookstreet Sec. Corp., 2002 US.Dist.LEXIS 16784 at *26-27; Herbert J. Sims & Co. v. Roven, 548 F.Supp. 2d 759, 766 (N.D. Cal. 2008).  Both cases appear quite applicable; in Brookstreet, the Court observed that investors "had not cited any cases in which a court has held that a person who is merely doing business with an account holder of a member firm becomes a 'customer' of the firm itself" and held that non-customers did "not have standing to arbitrate their claims against the plaintiffs before the NASD," enjoining the investors from proceeding with the arbitration. Id. at *26-27.  Similarly, in Herbert J. Sims & Co., the court held that investors had no right to arbitrate the claims against the investment bank because the investors were not customers of the bank, reasoning that "Plaintiffs has never provided any investment services or other services to any of the Investors and has never received any payments of money from them.  Indeed, Plaintiff knew nothing about the Investors and had never heard of them until it was served with the Statement of the Claim . . . ." Id. at 765-66. The Court also noted that it was not aware of any case supporting the proposition that an investment made through a brokerage firm, on advice from an agent at a separate firm, creates a customer relationship between the investor and the latter firm. Id.  Because of this, the Court granted the investment bank's request for a preliminary injunction and enjoined the investors from pursuing their claims in NASD arbitration." Id. at 766.

Defendants do not cite any cases that would indicate that they qualify as customers of Schwab by investing with Mrs. Bennett, the holder of a personal account at Schwab. Defendants' only response to this argument is that Defendants Thomas and Barbara Payne have their own account at Schwab and that the standard arbitration clause requires the arbitration of disputes not only involving the customer's account but also "any other Schwab

- 7 -

account in which you claim an interest." (Dkt.#24 at 7) Defendants argue that Mrs. Bennett's Schwab account qualifies as "another account" in which they claim an interest. (Dkt.#24 at 10) However, setting aside the fact that this would not save any other Defendants from lacking "customer" status, this argument does not appear persuasive for the simple fact that the Paynes' account was emptied eight years ago and sat dormant until four days before Defendants filed their Response, when the Paynes deposited $500 into the account. As of the date the FINRA action was filed, the Paynes' balance was zero.

Moreover, the Paynes have not alleged that Mrs. Bennett contracted with them to purchase any interest in her Schwab account; they are merely suing Schwab based on Schwab's alleged failure to adequately supervise Mrs. Bennett's use of the Schwab account. Because the Paynes have not alleged that they ever acquired any sort of equitable or other interest in the account, they have no right to compel Schwab to arbitrate claims arising out of it.

Because Defendants can articulate neither a contractual nor a customer-oriented basis for their alleged right to arbitrate their claims against Schwab, it appears they have no right to arbitrate their claims. Defendants appeal to equity in attempting to find an alternative basis for the right to arbitrate by asserting the doctrines of judicial estoppel and equitable estoppel. Both are discussed below.

**2.      Judicial Estoppel**

Defendants argue that because Schwab asserted that similarly situated investors in the Stern case *must* arbitrate their claims against Schwab, Schwab is judicially estopped from claiming the contrary in the present action.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001). The Ninth Circuit has limited the application of this doctrine to "cases where the court relied on, or 'accepted' the party's previous inconsistent position." Id. at 783. Logically, it would not make sense to force a party to continue to assert position A after an earlier court had ruled that position A was invalid. See id. at 782-83 ("Absent success in a

prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations."). Indeed, forcing a party to maintain a position that a prior court had held to be incorrect would be manifestly foolish and a waste of judicial resources. Because the Court ruled against Schwab in the prior case, the doctrine of judicial estoppel has no application here. In Stern, Schwab asserted that the investors' claims were subject to arbitration. After Judge Campbell ruled that such claims were not arbitrable, Schwab filed a preliminary injunction in the present case to enjoin the arbitration action that the Defendants in this case filed with FINRA. Schwab explained in its Reply that "Schwab brought this action to avoid having to litigate what amounts to exactly the same case in two different forums." This purpose is not inconsistent with initially seeking to enforce arbitration in Stern (and avoiding duplicative litigation in court) and then seeking to prevent arbitration here (and avoiding duplicative litigation before FINRA). For all of these reasons, Defendants' arguments that Schwab should be judicially estopped from seeking a preliminary injunction to stop the FINRA arbitration fail.

### 3. Equitable Estoppel

Alternatively, Defendants assert that Schwab should be equitably estopped from arguing that this case is not subject to arbitration because Defendants relied upon Schwab's position in Stern when filing their claim before FINRA. Defendants explain that "[i]f Schwab were allowed to evade arbitration of Defendants' claims, Defendants would have no recourse because Schwab would undoubtedly argue that statutes of limitation have run on certain of Defendant-Investors' claims during the time the Arbitration case has been pending." (Dkt.#24 at 13)

However, the doctrine of equitable estoppel requires three elements "(1) the party to be estopped [must] commit acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct." Flying Diamond Airpark, LLC v. Meienberg, 215 Ariz. 44, 50, 156 P.3d 1149, 1155 (Ariz. App. 2007). However, the party to be estopped must have induced reliance either "intentionally or through culpable negligence." Id. Furthermore, the "[r]esulting reliance must be justifiable."

Here, there is nothing to suggest that Schwab "intentionally" induced Defendants to rely on its motion to compel the Stern Plaintiffs to arbitrate their claims. Schwab avers that it did not know the present Defendants' claims existed when it moved to compel arbitration in Stern; thus, it is impossible that Schwab intended to induce reliance on the part of the present Defendants.

Nothing prevented the Defendants from filing a claim in court at the same time it filed its claim before FINRA; Moreover, Defendants' claims that Schwab would assert a statutes of limitations defense if they filed their claims in District Court are speculative. Schwab points out that Arizona's "Savings Statute," A.R.S. § 12-504, may provide recourse for Defendants. It generally allows defendants to refile actions that are terminated by means other than a final adjudication on the merits within six months without regard to the applicable statute of limitations ("If an action is commenced within the time limited for the action, and the action is terminated in any matter other than by abatement, voluntary dismissal, dismissal for lack of prosecution or a final judgment on the merits, the plaintiff . . . may commence a new action for the same cause after the expiration of the time so limited and within six months after such termination.").

### C. Irreparable Harm

Schwab cites several cases to the effect that a party suffers irreparable harm if it is "forced to expend time and resources arbitrating an issue that is not arbitrable." Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003); see also Invitrogen Corp., 2006 WL 381666 at *1 (observing that "the costs and fees associated with an unnecessary arbitration as well as the potential cost of setting aside any unfavorable arbitration result rise to the level of irreparable harm"); Paine Webber, Inc. v. Hartman, 921 F.2d 507, 515 (3d Cir. 1990) (holding that Paine Webber would suffer *per se* irreparable harm if a preliminary injunction was not entered prior to the court's determination of whether the customer's claims at issue were eligible for NASD arbitration). The Defendants do not argue that the alleged harm would be irreparable; they merely focus on other aspects such as balancing the equities, the merits, and a public policy. Thus, for the purposes of this

motion, Defendants have conceded that the irreparable harm element of the criteria for issuing a preliminary injunction is satisfied here.

### D. Balance of the Equities

To determine whether the balance of hardships favors the moving party, courts must "balance the interests of all parties and weigh the damage to each." Stormans, Inc. v. Selecky, 571 F.3d 960, 988 (9th Cir. 2009).

Here, as explained above, it is clear that Defendants have no right to force Schwab to arbitrate this action. If the Court denied the preliminary injunction, Schwab would be forced to spend substantial time and resources defending Defendants' claims before FINRA. Allowing Defendants to proceed with arbitration would benefit them in no way because the arbitration award would ultimately have to be set aside by the Court. Thus, the balance of equities favors granting the injunction to prevent arbitration.

### E. Public Interest

Defendants argue that "when a contract contains an arbitration clause, there is a presumption in favor of arbitrability." (Dkt.#24). However, "[t]he federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound." Comer v. Micor, Inc., 436 F.3d 1098, 1104 (9th Cir. 2006). While public policy favors court's finding a broad scope with respect to arbital issues under an enforceable agreement to arbitrate, this policy is completely "inapposite" where the issue is not whether a particular issue is arbitrable but whether a particular party is bound by or able to enforce an arbitration agreement. Id. at 1104. As the First Circuit pointed out, "the federal policy, however, does not extend to situations in which the identity of the parties who have agreed to arbitrate is unclear." McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994).

## IV. Conclusion

Defendants have shown no support for their assertion that they have either a contractual or a customer-based right to arbitrate their claims against Schwab. As explained above, the doctrines of judicial estoppel and equitable estoppel appear inapplicable to the present action. Moreover, Schwab has established irreparable harm should the Court fail to

grant the preliminary injunction. The balance of the equities and public policy appear to support granting the injunction. For these reasons, the Court will grant Schwab's Motion for Preliminary Injunction. The Court further declares that the Defendants in this action have no right to compel Schwab to arbitrate their claims before FINRA. Defendants are permanently enjoined from proceeding with the FINRA arbitration and are directed to voluntarily withdraw their claims before FINRA upon the entry of judgment in this action.

**Accordingly,**

**IT IS HEREBY ORDERED** granting Schwab's Motion for Preliminary Injunction (Dkt.#9). Defendants and those acting in concert with them, including their attorneys, are enjoined from proceeding with the arbitration filed by Defendants before FINRA as <u>David M. Reaves, as Trustee for the Bennett Liquidating Trust, et al. v. Charles Schwab & Co., Inc.</u>, Case No. 09-05232.

**IT IS FURTHER ORDERED** denying Defendants' Motion to Dismiss (Dkt.#28).

**IT IS FURTHER ORDERED** declaring that Schwab is not required to arbitrate the claims asserted against it in the Arbitration Action filed by Defendants.

**IT IS FURTHER ORDERED** requiring Defendants to voluntarily dismiss with prejudice the Arbitration Action.

**JUDGMENT ENTERED ACCORDINGLY.**

DATED this 3rd day of February, 2010.

_____
Mary H. Murguia
United States District Judge